Willam C. Ratlief

*v.*

Ira P. Yokum

(No. 14507)

Decided July 17, 1981.

*Sponaugle & Sponaugle* and *George I. Sponaugle, II*, for appellant.

*Charles W. Smith* for appellee.

MILLER, JUSTICE:

This appeal from the Circuit Court of Grant County is brought by William C. Ratlief, the plaintiff below, after a jury verdict in favor of the defendant, Ira P. Yokum. The appellant/plaintiff alleges that the trial court erred in not

directing a verdict in his favor; in giving certain erroneous instructions, including one of the defendant's instructions on last clear chance; and, in allowing inadmissible testimony to be heard by the jury. Because we believe that the trial court was incorrect in allowing the defendant to rely on the theory of last clear chance, we reverse.

This lawsuit arose out of a motor vehicle accident that occurred on a clear afternoon in November of 1975. It is undisputed that the plaintiff Ratlief was proceeding south in his car on U.S. Route 220 from Petersburg to Franklin. At the same time, the defendant Yokum was driving his truck out of a driveway on the west side of U.S. Route 220 and was preparing to turn south towards Franklin. A third vehicle which was driven by a Stanley Hostler in a northerly direction on U.S. Route 220 was also involved in the accident. However, Hostler is not a party in this lawsuit.

The evidence concerning the accident itself is hotly contested. According to the plaintiff's testimony, he was proceeding south at a speed of approximately 50 miles per hour when he saw the defendant's truck to his right in a driveway. He took his foot off the accelerator to see what the truck would do and when he was twenty to thirty feet from the driveway the defendant drove onto the highway. Plaintiff claims that because the defendant pulled onto the highway immediately in front of his car, he had to swerve into the northbound lane of Route 220. This action resulted in the plaintiff's car striking Hostler's automobile.

The defendant Yokum testified that he looked in both directions along U.S. Route 220 as he pulled out of the driveway. He stated he did not see any traffic proceeding south but he did see Hostler's automobile traveling north. After driving onto the highway, he turned south and was about seventy feet beyond the driveway when the accident occurred.

At the trial, testimony was also heard from Stanley Hostler, the driver of the northbound automobile struck by the plaintiff Ratlief, and the state trooper who investigated the accident. Hostler testified that, as he was traveling

along U.S. Route 220, he saw a truck pull out of a driveway to his left. He stated that almost simultaneously a car came out from behind the truck into his lane. He could not avoid the oncoming car and it struck his car head-on in the northbound lane. The state trooper's testimony primarily consisted of observations made at the accident scene. With the use of a map, the trooper pointed out where he found broken glass and where he observed two forty-five foot skid marks left by Ratlief's car.[1] After considering the testimony of these witnesses and a few other witnesses who testified about damages, the jury returned a verdict for the defendant.

The plaintiff now argues that the trial court erred in not directing a verdict in his favor. This Court has long recognized that a directed verdict should not be granted when there is conflicting evidence as to negligence. *Hovermale v. Berkley Springs Moose Lodge,* 165 W. Va. 689, 271 S.E.2d 335 (1980); *Jividen v. Legg,* 161 W. Va. 769, 245 S.E.2d 835 (1978); *Wager v. Sine,* 157 W. Va. 391, 201 S.E.2d 260 (1973); *Adams v. Sparacio,* 156 W. Va. 678, 196 S.E.2d 647 (1973); *Evans v. Farmer,* 148 W. Va. 142, 133 S.E.2d 710 (1963). As we stated in Syllabus Point 5 of *Hatten v. Mason Realty Co.,* 148 W. Va. 380, 135 S.E.2d 236 (1964):

> "Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them."

From our prior recitation of the facts, it is obvious that the facts on negligence were clearly in dispute. Therefore, the trial court did not err in allowing the case to go to the jury.

The plaintiff next complains that the trial court refused to give his "sudden emergency" instruction as tendered. In several cases, we have recognized that the driver of an automobile is held to a reduced standard of care when he

---

[1] This map was made part of the record; and, according to the map, the forty-five foot skid marks began approximately 18 feet south of the driveway and were wholly within the northbound lane.

is suddenly confronted with unforeseeable or emergency circumstances. *Young v. Ross,* 157 W. Va. 548, 202 S.E.2d 622 (1974); *Reilley v. Byard,* 146 W. Va. 292, 119 S.E.2d 650 (1961); *Spurlin v. Nardo,* 145 W. Va. 408, 114 S.E.2d 913 (1960); *Reece v. Hall,* 142 W. Va. 365, 95 S.E.2d 648 (1956). The "sudden emergency" rule was expressed in this fashion in Syllabus Point 2 of *Reilley, supra:*

> "A person in a sudden emergency not created in whole or in part by his own negligence, who acts according to his best judgment or who, because of insufficient time to form a judgment, fails to act in the most judicious manner, is not guilty of actionable negligence if he exercises the care which would be exercised by a reasonably prudent person in like circumstances."

As stated in *Reilley,* it is clear that a party cannot rely on the doctrine of "sudden emergency" when the emergency is created in whole or in part by the party's own negligence. *Lilly v. Taylor,* 151 W. Va. 730, 155 S.E.2d 579 (1967); *Korzun v. Shahan,* 151 W. Va. 243, 151 S.E.2d 287 (1966); *Crum v. Ward,* 146 W. Va. 421, 122 S.E.2d 18 (1961); *Mulroy v. CO-Operative Transit Co.,* 142 W. Va. 165, 95 S.E.2d 63 (1956). The trial court refused to give plaintiff's "sudden emergency" instruction as written because it did not contain the statement that the party seeking the benefit of a "sudden emergency" instruction cannot contribute in whole or in part to the emergency. The court added this language to the plaintiff's instruction before giving it to the jury and under our law the trial court acted correctly.

The plaintiff next objects to the trial court giving seven of the defendant's instructions as being either unsupported by the evidence or incorrect statements of law. Six of the instructions involved various portions of our motor vehicle statute relating to traffic regulations in Chapter 17C of the W. Va. Code. The instructions substantially followed the applicable statutory language and were relevant to the negligence issues raised under the facts of the case. The seventh instruction objected to by the plaintiff was a "last clear chance" instruction offered by the defendant. We have not had occasion to diretly consider

whether a defendant is entitled to utilize the last clear chance doctrine to insulate his negligence. In *Bower v. Brannon*, 141 W. Va. 435, 439-40, 90 S.E.2d 342, 345 (1955), we said:

"Heretofore, in this jurisdiction, the last clear chance doctrine has been applied only against defendants. However, we are not unmindful of the rule laid down in *Willard Stores, Inc., v. Cornnell*, 181 Va. 143, 23 S.E.2d 761, and the dissertations upon the subject in 49 W. Va. Law Quarterly 51, and 37 W. Va. Law Quarterly 362. Suffice to say that the evidence in this case did not justify the giving of this instruction."

In *Bradley v. Appalachian Power Co.*, 163 W. Va. 332, 256 S.E.2d 879, 882 (1979), we recognized that the doctrine of last clear chance was a judicial development to modify the harshness of the contributory negligence rule. This is the generally accepted reason for the development of the last clear chance doctrine. W. Prosser, *The Law of Torts* §66 (4th ed. 1971). Because the doctrine was originally used to moderate the plaintiff's contributory negligence most courts have refused to extend the doctrine to the defendant's negligence for the reasons stated in *Rollman v. Morgan*, 73 Ariz. 305, 307, 240 P.2d 1196, 1197 (1951):

"To invoke the doctrine on the defendant's behalf would only tend to confuse the jury. Such a use of the rule would simply be another method of charging the plaintiff with contributory negligence."

See also *Smith v. Wright*, 512 S.W.2d 943 (Ky. 1974); *Baumgartner v. State Farm Insurance Co.*, 356 So.2d 400 (La. 1978); *Schlimmeyer v. Yurkiw*, 50 App. Div.2d 616, 374 N.Y.S.2d 427 (1975); *Wolff v. Stenger*, 59 S.D. 231, 239 N.W. 181 (1931); Annot., 32 A.L.R.2d 543 (1953).

Quite apart from the foregoing reasons, any extension of the last clear chance rule ought to be avoided because of the complexity of the doctrine. As Prosser notes, "[t]he application of the doctrine has been attended with much confusion. Virtually every possible rule has been adopted,

often in a single jurisdiction." *The Law of Torts* at p. 428.[2] Because the last clear chance doctrine carries a substantial reasonance of the traditional proximate cause requirement,[3] it is likely that a jury will resolve any last clear chance issue on this basis. For these reasons, we conclude the doctrine of last clear chance is not available to the defendant.

Moreover, now that we have adopted a rule of comparative negligence in *Bradley, supra,* concerning the plaintiff's contributory negligence, there is little practical reason for maintaining the doctrine of last clear chance for the plaintiff. It is true that by way of dictum in *Bradley,* and without any extended analysis, we indicated "that in appropriate circumstances the doctrine of last clear chance is available." 163 W. Va. at 332, 256 S.E.2d at 887. A more thorough examination of this question leads us to conclude that the historical reason for the doctrine of last clear chance no longer exists since our adoption of comparative negligence. Furthermore, because of the doctrine's inter-relationship with the issue of proximate cause and because of the confusion surrounding the application of the doctrine,[4] we believe the better course would be to abolish

---

[2] The confusion in our cases is the subject of two articles by Professor Donley. R. Donley, *Observations on Last Clear Chance in West Virginia,* 37 W. Va. L. Q. 362 (1931); and R. Donley, *Last Clear Chance—Some Further Observations,* 49 W. Va. L. Q. 51 (1942).

[3] The proximate cause issue and its relation to the last clear chance doctrine is discussed by the following commentators: James, *Last Clear Chance: A Transitional Doctrine,* 47 Yale L. J. 704 (1938); MacIntyre, *The Rationale of Last Clear Chance,* 53 Harv. L. Rev. 1225 (1940).

[4] In *Barr v. Curry,* 137 W. Va. 364, 373-74, 71 S.E.2d 313, 318 (1952), we said:
"The doctrine generally rests on four factual situations: (1) Where the danger was actually discovered by the defendant, and the injured person was physically unable to escape the danger; (2) Where the danger was actually discovered by the defendant, but the injured person was physically able to escape the danger; (3) Where the danger was not actually discovered by the defendant but should have been discovered by him, and the injured person was physically unable to escape the danger; (4) Where the danger was not actually discovered by the defendant but should have

the use of the doctrine of last clear chance for the plaintiff. This is the conclusion reached by most courts in those states which have adopted a comparative negligence rule. *Kaatz v. State,* 540 P.2d 1037 (Alaska 1975); *Li v. Yellow Cab Company,* 13 Cal.3d 804, 119 Cal. Rptr. 858, 532 P.2d 1226 (1975); *Burns v. Ottati,* 513 P.2d 469 (Colo. App. 1973); *Hoffman v. Jones,* 280 So.2d 431 (Fla. 1973); *Cushman v. Perkins,* 245 A.2d 846 (Me. 1968); *Davies v. Butler,* 602 P.2d 605 (Nev. 1979); *French v. Grisby,* 571 S.W.2d 867 (Tex. 1978); *Danculovich v. Brown,* 593 P.2d 187 (Wyo. 1979); Annot., 78 A.L.R.3d 339, §15(b) (1977).[5]

In the present case, the trial court permitted the defendant to have a last clear chance instruction as against the plaintiff. In Syllabus Point 3 of *Orndoff v. Rowan,* 156 W. Va. 205, 192 S.E.2d 220 (1972), we made this statement as to the effect of an erroneous instruction:

> " 'An erroneous instruction is presumed to be prejudicial and warrants a new trial unless it appears that the complaining party was not prejudiced by such instruction.' Point 2 Syllabus, *Holler v. Linger,* 151 W. Va. 255, [151 S.E.2d 330 (1966)]."

In view of the defense verdict and because there was a substantial dispute on the negligence issue, we cannot conclude that the instruction was non-prejudicial.

The plaintiff next objects to the trial court allowing evidence to go to the jury concerning his medical insurance payments. During cross-examination of the plaintiff, it was brought out that eighty percent of his medical bills had been paid by his own medical insurance company. The

---

been discovered by him, and the injured person was physically able to escape."
The holding in *Barr* indicated that under the fourth category recovery was not available to the plaintiff.

[5] Several commentators take the view that where comparative negligence is available to the plaintiff, the last clear chance doctrine is no longer needed. V. Schwartz, *Comparative Negligence* §7.2 (1974); Note, *Torts: Comparative Negligence and the Doctrine of Last Chance—Are They Compatible?,* 28 Okla. L. Rev. 444 (1975); Note, *The Doctrine of Last Clear Chance—Should it Survive the Adoption of Comparative Negligence in Texas?,* 6 Texas Tech. L. R. 131 (1974).

plaintiff correctly states that the collateral source rule normally operates to preclude the offsetting of payments made by health and accident insurance companies or other collateral sources as against the damages claimed by the injured party. *Ellard v. Harvey*, 159 W. Va. 871, 231 S.E.2d 339 (1976); *Jones v. Appalachian Electric Power Co.*, 145 W. Va. 478, 115 S.E.2d 129 (1960); *see also*, Comment, *Damages–Collateral Source Rule*, 63 W. Va. L. Rev. 177 (1961); *and*, Annot., 77 A.L.R.3d 415 (1977).

The collateral source rule was established to prevent the defendant from taking advantage of payments received by the plaintiff as a result of his own contractual arrangements entirely independent of the defendant. Part of the rationale for this rule is that the party at fault should not be able to minimize his damages by offsetting payments received by the injured party through his own independent arrangements. As discussed in footnote 6 of *Helfend v. Southern California Rapid Transit District*, 2 Cal.3d 1, 84 Cal. Rptr. 173, 465 P.2d 61 (1970), the rule is not without its academic critics.

Most courts that have adopted the collateral source rule also ordinarily prohibit inquiry as to whether the plaintiff has received payments from collateral sources. This prohibition is based upon the theory that the jury may well reduce the damages based on the amounts that the plaintiff has been shown to have received from collateral sources. *Eichel v. New York Central Railroad Co.*, 375 U.S. 253, 11 L.Ed.2d 307, 84 S.Ct. 316 (1963); *Helfend v. Southern California Rapid Transit District, supra*; *Jacobs v. H. L. Rust Co.*, 353 A.2d 6 (D. C. App. 1976); *Blessing v. Boy Scouts of America*, 608 S.W.2d 484 (Mo. App. 1980); *Soucy v. Martin*, 402 A.2d 1167 (R. I. 1979).

We have not had occasion to determine whether evidence of payment from collateral sources constitutes reversible error. In a somewhat parallel situation, however, involving the bar against evidence that the defendant is covered by indemnity insurance, we have concluded that not every reference to insurance will constitute reversible error. *Adkins v. Smith*, 142 W. Va. 772, 98 S.E.2d 712 (1957); *Walker*

*v. Robertson,* 141 W. Va. 563, 91 S.E.2d 468 (1956); *Smith v. Gould,* 110 W. Va. 579, 159 S.E. 53 (1931).

We do not believe that the plaintiff's initial disclosure on direct examination that he had collateral insurance automatically opened the door for the defense attorney's further inquiry about the payment of his medical bills by his insurance carrier. The defendant argues that any error was rendered harmless by virtue of a joint stipulation of the medical expenses but such stipulation would not have precluded the jury from offsetting in other areas of the verdict. The reason the error is harmless in this case is that the jury did not reach the damage issue but disposed of the case against the plaintiff on the liability issue.

The plaintiff finally objects to evidence that was brought in during the cross-examination of Stanley Hostler, the driver of the northbound car. The plaintiff argues that the defendant should not have been allowed to ask Mr. Hostler if he had a lawsuit arising out of this accident presently pending against the defendant. The plaintiff argues that this question exceeded the scope of direct examination and that it was not relevant to Mr. Hostler's credibility.

A question concerning a witness' pending lawsuit against one of the parties in whose case the witness is testifying is relevant since it tends to show some bias or interest on the part of the witness that might affect his credibility. In *State v. Jones,* 161 W. Va. 55, 239 S.E.2d 763, 770 (1977), *overruled on other grounds, State v. Petry,* \_\_\_\_ W. Va. \_\_\_\_, 273 S.E.2d 346 (1980), we made this general statement:

> "As a general rule in both civil and criminal cases, bias, prejudice or expected favor as a result of testifying is admissible on the issue of credibility." (citations omitted)

*See also Butcher v. Stull,* 140 W. Va. 31, 82 S.E.2d 278 (1954); *Schmertz v. Hammond,* 47 W. Va. 527, 35 S.E. 945 (1900); F. Cleckley, *Handbook on Evidence,* 115-19 (Michie 1978).

The question was not improper since it tended to show that Mr. Hostler had a suit pending against the defendant and therefore might be expected to be biased against the

defendant's theory of the case. Furthermore, we note that on redirect the plaintiff asked Mr. Hostler if its was not true that he also had a lawsuit presently pending against the plaintiff. Therefore, the jury was fully informed that Mr. Hostler had not singled out only one of the two parties to sue in his lawsuit.

The plaintiff also objects to the trial court allowing the defendant to impeach Mr. Hostler by using his answers to interrogatories filed in Hostler's pending lawsuit against the plaintiff and defendant. The defendant used the interrogatory answers to attempt to show that Mr. Hostler's trial testimony differed from his answers to the interrogatories. The plaintiff argues that, since Rule 33 of the West Virginia Rules of Civil Procedure allows interrogatories to be served only on a party, and since Mr. Hostler was not a party in this lawsuit, his interrogatory answers in another lawsuit could not be used for impeachment purposes at this trial.

We believe that the plaintiff places an unnecessary restriction on the use of interrogatory answers. We believe that interrogatory answers can be used for any relevant evidentiary purpose since Rule 33, West Virginia Rules of Civil Procedure, states that "the answers may be used to the extent permitted by the rules of evidence." One recognized use of interrogatory answers is to impeach a witness with his prior inconsistent statement. *Deyo v. Kilbourne*, 84 Cal. App.3d 771, 149 Cal. Rptr. 499 (1978); *Seiden v. Allen*, 135 N. J. Super. 253, 343 A.2d 125 (1975); *Burns v. James*, 398 A.2d 1125 (R.I. 1979). Other jurisdictions have allowed interrogatory answers from one case to be used in another related case. *Wright v. Metropolitan Atlanta Rapid Transit Authority*, 156 Ga. App. 704, 275 S.E.2d 766 (1980); *Calvanese v. A.S.W. Taxi Corp.*, 405 N.E.2d 1001 (Mass. App. 1980). The trial court therefore did not commit error then in allowing the defendant to use Mr. Hostler's interrogatory answers from another case arising out of the same accident for purposes of impeachment.

Having found the defendant's instruction on last clear chance to be reversible error, we reverse the circuit court's

final judgment and remand the case for further proceedings.

*Reversed and Remanded.*