**Diane C. LAWS, Plaintiff Below, Appellant,**

v.

**Barbara J. WEBB, Defendant Below, Appellee.**

No. 211, 1994 *.

Supreme Court of Delaware.

Submitted: April 11, 1995.

Decided: May 12, 1995.

---

* This appeal was consolidated for the purpose of argument with *Patricia Ann Cox v. James E.* *Turner, Jr.,* No. 214, 1994, which will be the subject of a separate decision hereafter.

I. Barry Guerke, Parkowski, Noble & Guerke, P.A., Dover, for appellant Diane C. Laws.

James W. Semple, Morris, James, Hitchens & Williams, Wilmington, for appellee Barbara J. Webb.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en banc.

WALSH, Justice:

In this appeal from the Superior Court, we address, *inter alia*, whether the common law doctrine of last clear chance was abrogated by the legislative adoption of comparative negligence in Delaware. We conclude that the doctrine of last clear chance, both in theory and application, is incompatible with the principles of comparative fault which underlie the Delaware statute (10 *Del.C.* § 8132). Accordingly, we affirm the Superior Court's refusal to instruct the jury on the effect of last clear chance. Additionally, we have concluded that the Superior Court ruled correctly regarding the admissibility of the plaintiff-appellant's alcohol consumption and the investigating officer's statements regard-ing accident causation. Although we find that the trial court erred in permitting the investigating officer to testify concerning the non-issuance of a traffic citation, we find such error harmless under the facts of this case. Accordingly, we affirm the judgment of the Superior Court.

## I

The Superior Court proceedings arose from a motor vehicle-pedestrian accident which occurred on South Market Street in Wilmington on November 10, 1988. At approximately 7:30 p.m. on that date, the defendant-appellee, Barbara Webb ("Webb"), was driving southbound on South Market Street after picking up her father at the Wilmington train station. At the point of the accident, South Market Street is a one way street with four lanes. Webb testified that she was driving in the second lane from the right at approximately thirty miles per hour. The street was wet because of an earlier rain, but visibility was aided by street lights and signs from adjacent businesses.

Webb testified that, after emerging from a curve in the street, she saw someone, later identified as the plaintiff-appellant Diane Laws ("Laws"), talking to another person approximately 300 feet away. According to the testimony of Webb and her father, Laws was in the right-hand lane within approximately one to three feet of the curb, and she was walking in the direction of the Webbs' car while looking away and conversing with a person who was on the curb. Webb testified that she maintained her speed of thirty miles per hour[1] until, when within thirty feet from the car, Laws "darted out" erratically into the street. Webb applied her brakes and attempted, unsuccessfully, to swerve to the right to avoid hitting Laws. Laws was struck by the left front side of the car near the headlight. The impact sent Laws tumbling over the driver's side of Webb's car. As a result, Laws suffered serious injuries to her legs and pelvis. Laws has no recollection of the accident, and she was later told by medical personnel that the traumatic experi-

---

1. The posted speed limit on South Market Street was 35 miles per hour.

ence caused her to suffer from retrograde amnesia.

The area at which Laws was struck was not a crosswalk nor a location otherwise designated for pedestrians. Police Officer Kenneth Jackson ("Officer Jackson") responded to the accident, and he prepared a standard accident report after a cursory investigation. Because Laws could not remember anything from the accident, Officer Jackson relied almost exclusively upon the statements of Webb and her father in his investigation and determined that the cause of the accident was "improper crossing." He did not, however, issue a traffic citation to either party. The medical records from the hospital to which Laws was transported after the accident revealed that Laws had a blood alcohol content reading of 248 milligrams per deciliter upon arrival. At the hospital, Laws told medical personnel that she had been drinking two pints of vodka a day during a two-day span prior to the accident. Laws' husband ("husband") also stated to medical personnel that his wife was in a DUI program.[2]

Prior to trial, Laws filed a motion in limine to exclude all testimony or other evidence regarding her consumption of alcohol prior to the accident. In granting her motion in part, the court excluded her blood alcohol reading, her late husband's statements concerning her drinking, and her orthopedic surgeon's testimony. The court did admit, however, Laws' statement that she had been drinking prior to the accident, as well as hospital records that confirmed this statement. In an apparent second attempt to exclude this evidence from consideration by the jury, Laws then admitted negligence in attempting to cross South Market Street at an improper location. The court denied Laws' "renewed" motion in limine.

At trial, Officer Jackson, testifying for the plaintiff, stated that he had investigated nearly twenty accidents involving pedestrians and that he prepared a standard police report as a part of his regular procedure in investigating accidents. On cross-examination, Officer Jackson testified (over Laws'

objection) that he did not charge either party with a traffic violation, but that, on a section of the accident form that he prepared regarding the accident in dispute, he identified the "primary cause of the accident" as "improper crossing."

Both parties presented expert testimony from accident reconstruction experts. Laws' expert testified that Webb had sufficient time to avoid the accident if she had exercised due care by braking normally when she realized that Laws was not going to clear her pathway. It was his opinion that Webb's actions caused the accident. Webb's expert testified that, to the contrary, Webb had insufficient time to avoid striking Laws, and that Laws' erratic behavior in crossing the street was the cause of the accident.

At the conclusion of plaintiff's case, both parties moved for directed verdicts, which the court denied. At the conclusion of all the evidence, Laws renewed her motion, which was again denied. Laws also tendered to the court a proposed jury instruction on the doctrine of last clear chance. Webb, meanwhile, moved to preclude the last clear chance doctrine from consideration by the jury. The court reserved judgment on that matter until the prayer conference, at which time the court granted Webb's motion. The court ruled that the adoption of the comparative negligence statute in Delaware abolished the last clear chance doctrine, and it thus denied Laws' request for a jury instruction on last clear chance. Laws properly excepted to the court's ruling.

The jury rendered its verdict in the form of special interrogatories. The first question posed read: "Was there negligence by the defendant which was a proximate cause of the incident in which negligence or injury resulted to the plaintiff?" The jury answered in the negative, obviating the need for further answers and resulting in a verdict in favor of Webb. Laws then filed post-verdict motions attacking the trial court's ruling on last clear chance as well as its ruling on disputed evidentiary matters.

2. Husband also filed a loss of consortium claim against Webb in the Superior Court. Husband died during the pendency of the proceedings, however, and Laws, as administratrix of his estate, voluntarily dismissed the lost consortium claim prior to trial.

These motions were denied and this appeal followed.

## II

■ Laws first claims that the Superior Court erred in its ruling that the last clear chance doctrine was abolished by the enactment of Delaware's comparative negligence statute. Laws contends that the doctrine survives the advent of comparative negligence because the doctrine of last clear chance is a special application of proximate causation under Delaware law. We have re-examined the doctrine of last clear chance in light of our current system of comparative negligence and conclude that the "all or nothing" approach to liability which characterizes that doctrine is incompatible with our current system that apportions liability based upon comparative fault. In our view, the remaining vestiges of last clear chance have become totally subsumed within the theory of comparative negligence.

■ Prior to the enactment of Delaware's comparative negligence statute, the courts of this State recognized the traditional form of contributory negligence as a part of our common law. *James v. Krause*, Del.Super., 75 A.2d 237, 241 (1950). Under that formulation, a person whose negligence contributed to (proximately caused) his injury *in any respect* could not recover from any other party whose negligent conduct was also a proximate cause of his injury. *Id.; Culver v. Bennett*, Del.Supr., 588 A.2d 1094, 1097–98 (1991). In its traditional form, contributory negligence was as an "all or nothing" standard; when operative, it constituted an absolute bar to any recovery by an injured plaintiff regardless of the amount of negligence by a defendant. *Culver*, 588 A.2d at 1097. The doctrine was criticized virtually from its very onset on the basis that it operates inequitably by placing upon one party the entire burden of an injury instead of distributing responsibility in proportion to each party's fault. W. Page Keeton, *et al., Prosser and Keeton on the Law of Torts,* § 65, at 453 (5th ed. 1984) (hereinafter *"Prosser and Keeton"*); 4 Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray, *The Law of Torts,* § 22.3, at 287–88 (2nd ed. 1986).

■ The last clear chance doctrine was judicially created to ameliorate the harsh consequences to a negligent plaintiff of strict adherence to the contributory negligence rule. *Prosser and Keeton, supra,* § 66, at 464. Delaware has long recognized the doctrine of last clear chance as an exception to the rule that contributory negligence bars recovery. *Cummins v. Spruance,* Del.Super., 4 Harr. 315 (1845); *Lord v. Poore,* Del.Supr., 108 A.2d 366, 369 (1954). Essentially, the doctrine of last clear chance provides that the negligence of a plaintiff that places him in a position of helpless peril will not bar his recovery from a defendant who has become aware of plaintiff's predicament and who could have avoided injury to the plaintiff by the exercise of due care, but thereafter fails to so. *Island Express v. Frederick,* Del.Supr., 171 A. 181, 185 (1934). In other words, the doctrine permits a plaintiff to recover his entire damages despite his contributory negligence if the defendant had the last opportunity (last clear chance) to avoid the accident. Thus, last clear chance is the converse of the "all or nothing" rule of contributory negligence; its operation affords a plaintiff a *full* recovery regardless of the amount of his negligence. Although the last clear chance doctrine has been adopted in some form in every jurisdiction that has applied the contributory negligence rule, it is a doctrine "as to the basis or extent of which there has been little agreement and endless discussion." *Prosser and Keeton, supra,* § 66, at 462.[3]

---

**3.** Those authors continue, "No very satisfactory reason for the rule ever has been suggested." *Prosser and Keeton, supra,* § 66, at 463 (5th ed. 1984). The two explanations that have traditionally been given include: (1) that the later negligence of defendant constitutes a higher degree of fault, i.e., gross negligence, recklessness, or intentional conduct, in failing to avoid the perceived perilous position of the plaintiff; and (2) that plaintiff's negligence is not the legal or proximate cause of the injury because the later negligence of the defendant is the supervening cause that relieves the plaintiff of responsibility. *Restatement (Second) Torts* § 479 cmt. a (1965); *Prosser and Keeton, supra,* § 66. As noted earlier, Delaware is one of the few states that adopted the latter rationale. *Island Express v. Frederick,* Del.Supr., 171 A. 181, 186 (1934). Neither theo-

In 1984, Delaware adopted its modified comparative negligence statute:

> In all actions brought to recover damages for negligence which results in death or injury to person or property, the fact that the plaintiff may have been contributorily negligent shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the negligence of the defendant or the combined negligence of all defendants against whom recovery is sought, but any damages awarded shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

10 *Del.C.* § 8132. The enactment of the comparative negligence statute manifests a legislative intent to change Delaware's common law rule of contributory negligence. *Culver*, 588 A.2d at 1099. Under the statute, a negligent plaintiff is permitted to recover from a negligent defendant so long as plaintiff's contributory negligence is 50% or less, although plaintiff's recovery is reduced in proportion to his fault. *Id.* at 1098. The statute thus reflects a departure from the "all or nothing" approach to liability—at least in cases where plaintiff's negligence is 50% or less—in favor of a system that assesses liability in proportion to fault.

Laws asserts that the last clear chance doctrine survives Delaware's adoption of comparative negligence. We disagree. The last clear chance doctrine represents a judicial attempt to enable a negligent plaintiff to recover from a negligent defendant under the rigors of a contributory negligence system. *See Dykeman v. Engelbrecht*, Ct.App., 166 Ariz. 398, 803 P.2d 119, 122 (1990). Since this State's adoption of comparative negligence, however, the historical rationale

for the doctrine no longer remains an appropriate concern. By its very nature, a comparative fault system obviates any need to employ rules that were designed to ameliorate the harshness of the contributory negligence rule.

Last clear chance is not only superfluous, it is fundamentally incompatible with a comparative negligence system.[4] The application of last clear chance in this system would completely contravene the intent of the statute to the extent the doctrine provides a *complete* recovery to a negligent plaintiff regardless of relative fault. By shifting the entire burden of an injury to a defendant, last clear chance is no less arbitrary than the common law contributory negligence standard. *See also Cushman v. Perkins*, Me. Supr., 245 A.2d 846, 848 (1968) (stating that "the harshness to the plaintiff of the contributory negligence rule is exchanged for one of harshness under last clear chance. Both are 'all or nothing' rules."); William L. Prosser, *Comparative Negligence*, 51 Mich.L.Rev. 465, 474 (1953) (stating that "it is still no more reasonable to charge the defendant with the plaintiff's share of the consequences of his fault than to charge the plaintiff with defendant's").

This Court has specifically recognized the ameliorating effect of the comparative negligence statute.

> In our view, adoption of a comparative negligence standard in 1984 manifests a legislative intention from that date to retreat from a system of inflexible and unforgiving rules in favor of evaluation of the plaintiff's conduct on a case-by-case basis.

*Koutoufaris v. Dick*, Del.Supr., 604 A.2d 390, 398 (1992). In our view, by providing *com-*

---

ry, however, is entirely acceptable or consistent with the spectrum of cases in which the doctrine has been applied. *Restatement (Second) Torts* § 479 cmt. a (1965); 4 Fowler V. Harper, Fleming James, Jr., & Oscar S. Gray, *The Law of Torts*, § 22.13 (2nd ed. 1986). The better rationale (and the one universally accepted) is that the doctrine was prompted by the judiciary's fundamental aversion of the harshness of the contributory negligence system. *Restatement (Second) Torts* § 479 cmt. a (1965); *Prosser and Keeton, supra*, § 66, at 464.

4. The incompatibility of the two doctrines is obvious. For example, assume that a plaintiff and a defendant are negligent, and that they proximately cause plaintiff injury. Further assume that plaintiff is 99% at fault and defendant is 1% at fault. Under our modified comparative negligence statute, plaintiff is denied recovery because his fault is more than 50%. However, if the doctrine of last clear chance applies, plaintiff is permitted to recover 100% of his damages despite *the very small percentage of fault attributable to defendant*. Such a result is manifestly incompatible with a system of comparative fault.

*plete* recovery to a plaintiff regardless of fault, the last clear chance doctrine represents one of the "inflexible and unforgiving rules" that the General Assembly sought to abolish by its enactment of comparative negligence. *Id.* We perceive no logical basis to retain the "all or nothing" doctrine of last clear chance in light of the General Assembly's rejection of the "all or nothing" common law rule of contributory negligence. *See also id.* at 398 (holding that secondary assumption of the risk as a complete bar to recovery is inconsistent with comparative negligence).

▪ In sum, a doctrine that assigns sole liability to one party *regardless* of the amount of fault simply cannot survive under a system of comparative negligence. Where the negligence of a plaintiff and a defendant combine to cause an injury to plaintiff, each party's liability must be determined in proportion to his relative fault. Any other result would be "clearly at variance with the legislative intent that, where negligence is reflected in the conduct of both parties, liability, and consequent recovery, be determined proportionately." *Koutoufaris,* 604 A.2d at 398; *see also Li v. Yellow Cab Company of California,* 13 Cal.3d 804, 119 Cal. Rptr. 858, 871, 532 P.2d 1226, 1240 (1975) (holding that "when [ ] comparative negligence is adopted, the need for last clear chance as a palliative of the hardships of the 'all-or-nothing' rule disappears and its retention results only in a windfall to the plaintiff in direct contravention of the principle of liability in proportion to fault.") (citations omitted). We therefore join the growing trend of jurisdictions that hold that last clear chance is superfluous and incompatible with a comparative negligence system. *Annotation, Modern Development of Comparative Negligence Doctrine Having Applicability to Negligence Actions Generally,* 78 A.L.R.3d 339, 387 (1977).[5]

Despite the apparent incompatibility, Laws contends that the doctrine of last clear chance survives comparative negligence because Delaware has traditionally viewed the doctrine as an application of proximate cause. *See Frederick,* 171 A. at 186 ("The doctrine of 'last clear chance' is a special application of the doctrine of proximate cause."); *see also Baker v. Reid,* Del.Supr., 57 A.2d 103, 108 (1947); *Poore,* 108 A.2d at 369; *Showell v. Atkins,* Del.Supr., 483 A.2d 1113 (1984). Laws correctly notes that, although the comparative negligence statute has abrogated the absolute bar to recovery of contributory negligence, it does not reflect a legislative intent to change Delaware's common law standard for proximate causation with respect to either the defendant's negligence or the plaintiff's contributory negligence. *Moffitt v. Carroll,* Del.Supr., 640 A.2d 169, 173 (1994); *Culver,* 588 A.2d at 1098. Thus, the argument runs, because the law of proximate cause remains unchanged by the comparative negligence statute, last clear chance—a special application of proximate causation—survives as a viable doctrine under Delaware law. We disagree.

▪ As an application of proximate cause, the last clear chance doctrine provides that,

5. *See, e.g., Kaatz v. State,* Alaska Supr., 540 P.2d 1037, 1047 (1975); *Dykeman v. Engelbrecht,* Ct. App., 166 Ariz. 398, 803 P.2d 119, 122 (1990); *Li v. Yellow Cab Co. of California,* Cal.Supr., 13 Cal.3d 804, 119 Cal.Rptr. 858, 871, 532 P.2d 1226, 1240 (1975); *Burns v. Ottati,* Colo.Ct.App., 513 P.2d 469, 472 (1973); *Hoffman v. Jones,* Fla.Supr., 280 So.2d 431, 438 (1973); *Seabord Coast Line Railroad Co. v. Daugherty,* 118 Ga. App. 518, 164 S.E.2d 269 (1968); *Alvis v. Ribar,* 85 Ill.2d 1, 52 Ill.Dec. 23, 35, 421 N.E.2d 886, 898 (1981); *Bokhoven v. Klinker,* Iowa Supr., 474 N.W.2d 553, 556 (1991); *Kennedy v. Hageman,* Ky.Ct.App., 704 S.W.2d 656 (1985); *Ogden v. Dalton,* La.Ct.App., 501 So.2d 1071, 1074 (1987); *Cushman v. Perkins,* Me.Supr., 245 A.2d 846, 847 (1968); *Callesen v. Grand Truck Western R.R. Co.,* 175 Mich.App. 252, 437 N.W.2d 372 (1989); *Gustafson v. Benda,* Mo.Supr., 661 S.W.2d 11

(1983); *Davies v. Butler,* 95 Nev. 763, 602 P.2d 605, 613 (1979); *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234, 1239 (1981); *Dominguez v. Manhattan & Bronx Surface Transit Operating Authority,* 46 N.Y.2d 528, 415 N.Y.S.2d 634, 388 N.E.2d 1221 (1979); *Mitchell v. Ross,* 14 Ohio App.3d 75, 470 N.E.2d 245 (1984); *Spearing v. Starcher,* 367 Pa.Super. 22, 532 A.2d 36 (1987); *French v. Grigsby,* Tex.Supr., 571 S.W.2d 867 (1978); *Dixon v. Stewart,* Utah Supr., 658 P.2d 591 (1982); *Cunningham v. Western Liquid Propane Gas Service, Inc.,* 39 Wash.App. 185, 693 P.2d 123, 124 (1984); *Ratlief v. Yokum,* 167 W.Va. 779, 280 S.E.2d 584, 588–89 (1981); *Britton v. Hoyt,* 63 Wis.2d 688, 218 N.W.2d 274 (1974); *Danculovich v. Brown,* Wyo.Supr., 593 P.2d 187, 195 (1979). Some jurisdictions have abrogated the doctrine by statute. *See, e.g.,* Conn.Gen.State. Ann. § 52–572h(c); Ore.Rev.Stat. § 18.475(1).

when a defendant fails to avail himself of the last opportunity to avoid an accident with plaintiff, such failure is considered the sole proximate cause of the injury, and plaintiff's antecedent negligence is considered remote in the chain of causation and a mere condition of his injury. *Frederick,* 171 A. at 187; *Poore,* 108 A.2d at 369; *Baker,* 57 A.2d at 108. Under this approach, the relative timing of each party's negligence is of critical importance. In order to hold defendant fully liable under last clear chance, the plaintiff must cease to be actively negligent in time to enable defendant to discover the peril and avoid the harm; the doctrine is not implicated when the plaintiff's negligence continues until the moment of the accident, or is otherwise concurrent with defendant's negligence. *Frederick,* 171 A. at 187. This explanation of the last clear chance doctrine has been criticized as inconsistent with traditional ideas of proximate causation.[6]

This Court has long recognized the traditional "but for" definition of proximate causation. *Culver,* 588 A.2d at 1097 (citing *Chudnofsky v. Edwards,* Del.Supr., 208 A.2d 516, 518 (1965)). In its simplest form, "proximate cause is [defined in Delaware as] that direct cause without which the accident would not have occurred." *Id.* (quoting *Chudnofsky,* 208 A.2d at 518). In other words, to satisfy the "but for" test, a proximate cause must be one "which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *Id.* (quoting *James v. Krause,* Del.Super., 75 A.2d 237, 241 (1950)). It is well established

that there may be more than one proximate cause of an injury. *Moffitt,* 640 A.2d at 179; *Culver,* 588 A.2d at 1097; *McKeon v. Goldstein,* Del.Supr., 164 A.2d 260, 262 (1960).

Attempting to establish *as a matter of law* that, because the defendant had the last opportunity to avoid an accident his negligence *must have been* the sole proximate cause of plaintiff's injury, is entirely inconsistent with our recognition that several acts of negligence may combine to proximately cause an injury. *See also Cushman,* 245 A.2d at 849. It is well settled that the issue of proximate causation is ordinarily a question of fact to be submitted to the jury for its determination on a case-by-case basis. *Culver,* 588 A.2d at 1098. "Proximate causation is predicated upon an objective analysis of the circumstances surrounding the actions of one or more persons, to determine whether without such action the injury would not have occurred." *Moffitt,* 640 A.2d at 175. The trier of fact is therefore charged with assessing the negligence and/or proximate cause of each actor separately, and, if need be, assessing liability to each party in proportion to fault. The proximate cause of an accident, however, is the same regardless of who is injured in the accident. In this determination, the timing of each party's negligence is a relevant, but not necessarily dispositive, factor. Certainly, negligence of a plaintiff placing him in a position of peril may constitute (if the trier of fact so finds) a proximate cause of his injury, notwithstanding the fact that his negligence *ceased* to be active by the time of the accident.[7] We therefore agree

---

6. *See, e.g., Modern Tort Law, supra,* § 11.07, at 327–28; Kevin J. Grehan, *Comparative Negligence,* 81 Col.L.Rev. 1668, 1679 (1981); Ruth R. Budd, *The Validity of Retaining the Last Clear Chance Doctrine in a State Having a Comparative Negligence Statute,* 1 Georgia S.B.J. 500 (1965); *Annotation, Application of Last Clear Chance Doctrine in Comparative Negligence Case,* 59 A.L.R.2d 1261, 1263 (1958); Leon Green, *Contributory Negligence and Proximate Cause,* 6 N.C.L.Rev. 3 (1928). For example, a recognized treatise on tort law states that:

> While this coincides rather well with the attempt made in an older day to fix liability upon the last human wrongdoer, it is quite out of line with the evolving ideas of proximate cause. In such a case the negligence of the plaintiff undoubtedly has been a cause, and a

substantial and important one, of his own damage, and it cannot be said that injury was not fully within the risk which the plaintiff has created.

*Prosser and Keeton, supra,* § 66, at 462–63 (footnotes omitted).

7. One commentator has noted that:

> Certainly if an actor's negligence has put himself or his property in a position of peril, that negligence is a proximate cause of the injury which follows when the perils of the position become realized. In such case the likelihood of danger that befell was one of the very things that made his original act negligent, and probable consequences are proximate ones.

with those courts that have rejected the last clear chance doctrine as incompatible with comparative negligence even though those courts had previously viewed last clear chance as a part of proximate cause. *See, e.g., Bokhoven v. Klinker,* Iowa Supr., 474 N.W.2d 553, 556 (1991) ("[T]he doctrine of last clear chance, even when considered a part of proximate cause, has no further function to perform where contributory negligence is no longer a complete bar to plaintiff's recovery"); *Ratlief v. Yokum,* 167 W.Va. 779, 280 S.E.2d 584, 589 (1981) ("[B]ecause of the doctrine's interrelationship with the issue of proximate cause ... the better course would be to abolish the use of the last clear chance for the plaintiff"); *Davies v. Butler,* 95 Nev. 763, 602 P.2d 605, 613 (1979) (holding that last clear chance as a part of proximate cause should not survive under comparative negligence system); *Danculovich v. Brown,* Wyo.Supr., 593 P.2d 187, 195 (1979) (holding there is no practical basis to find that last clear chance continues to exist within proximate cause upon adoption of comparative negligence system); *Cushman,* 245 A.2d at 849 (same); *but cf. Vlach v. Wyman,* 78 S.D. 504, 104 N.W.2d 817, 819 (1960) (holding that last clear chance survives comparative negligence as within proximate cause).

■ This is not to say that the evidentiary concepts which underlie the notion of last clear chance are irrelevant to the trial process. As with any other evidence, either party may argue the temporal factors important to the application of the last clear chance doctrine (*e.g.,* plaintiff's helplessness which led to predicament, defendant's subsequent discovery and negligent failure to avoid accident) to the trier of fact, and it may properly consider those factors in apportioning fault. In addition, either party may attempt to persuade the trier of fact that the other party should bear a greater percentage of liability for an accident because he or she had the last clear chance to avoid injury. However, last clear chance becomes only one of many factors to be weighed by the trier of fact in assessing and comparing the parties' relative fault, instead of an inflexible "all or nothing" doctrine of liability.[8]

The doctrine of last clear chance was judicially created in Delaware as a response to the harsh effect of the Contributory Negligence Doctrine. We therefore need have no reluctance in ending it, in view of the changed circumstances resulting from the adoption by the General Assembly of the Comparative Negligence Doctrine. *See Beattie v. Beattie,* Del.Supr., 630 A.2d 1096 (1993); *Travelers Indem. Co. v. Lake,* Del. Supr., 594 A.2d 38 (1991); *Hack v. Hack,* 495 Pa. 300, 433 A.2d 859 (1981).

### III

■ Laws next claims that the Superior Court erred when it permitted Officer Jackson to testify that he did not charge Webb with a traffic violation. Laws contends that the error was unfairly prejudicial and warrants a new trial. D.R.E. 403.[9] Although we agree that it was error for the Superior Court to permit this testimony, we find such error harmless.

A plea of guilty to a traffic offense is generally admissible in a civil trial because it acts as an *admission* by the pleading party of the conduct underlying the charge, which, in a civil trial, may form a basis for establishing negligence *per se. Boyd v. Hammond,* Del.Supr., 187 A.2d 413, 416 (1963). The mere fact that charges have been brought (or not been brought) against a party, however,

---

Fleming James, Jr., *Last Clear Chance: A Transitional Doctrine,* 47 Yale L.J. 704, 707 (1938); *see also The Law of Torts, supra,* § 22.12, at 356–57.

8. Indeed the trier of fact may conclude that the evidence supporting the concept of last clear chance rises to the level of a supervening cause of the injury. *Sears, Roebuck & Co. v. Huang,* Del.Supr., 652 A.2d 568 (1995).

9. Rule 403 of the Delaware Rules of Evidence provides:

**Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion or Waste of Time.**
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by consideration of undue delay, waste of time or needless presentation of cumulative evidence.

is inadmissible in a civil trial. *Bierczynski v. Rogers*, Del.Supr., 239 A.2d 218, 222 (1968). Such evidence is inadmissible because of the risk that the jury may find the lack of criminal liability (failure to arrest or issue traffic violation) determinative of the question of civil liability, as well as the threat that the jury will be influenced by the fact that the police found (or did not find) one of the parties to be "at fault." *See Groves v. Compton*, 167 W.Va. 873, 280 S.E.2d 708, 710 (1981). Therefore, it was error for the court to permit the testimony of Officer Jackson that Webb was not charged with a traffic violation as a result of the accident. In our view, however, such error was harmless.

First, in contrast to a case where a police officer testifies that he failed to charge a single party with a violation of law, here, Officer Jackson testified that he did not charge *either* party concerning the accident. His testimony was thus impartial, and not an assessment of fault of either party. Second, it was emphasized to the jury during trial that the police failed to undertake a thorough investigation of the accident, which ostensibly diminished any weight that might be accorded to Officer Jackson's testimony regarding the accident. Third, the opposing accident reconstruction experts provided extensive and elaborate testimony concerning fault and causation of the accident that serve to minimize the importance of Officer Jackson's testimony regarding these issues. Finally, and most importantly, the court instructed the jury that a traffic citation issued

> does not mean that a party may not be guilty of negligence by violation [of] a common law duty or a duty imposed by a statute, such as a part of the motor vehicle laws of Delaware, which would constitute negligence *per se*. In other words the officer's decision not to bring a charge against either party is not binding on you. You must make your own determination of negligence and proximate causation based upon the evidence presented to you in this trial, of which the officer may not have had the benefit.

We believe that these factors, in the aggregate, minimized any prejudice to Laws so that the error concerning Officer Jackson's testimony was harmless.

## IV

Laws further claims that the court erred when it permitted testimony from Officer Jackson that he listed the primary cause of the accident in his police report as Laws' "improper crossing." On his police report, Officer Jackson wrote "16–1 Improper Crossing." When asked what "16–1" meant, Jackson responded that it illustrated the "primary cause of the accident." Laws objected on the ground that the officer was not an accident reconstruction expert and was therefore not qualified to give an opinion as to the cause of the accident. The court overruled Laws' objection. On appeal, Laws maintains her position that Jackson was not qualified to make such a statement and that his testimony was unfairly prejudicial. We disagree.

Rulings concerning the admissibility of evidence implicate the sound discretion of the trial court. *Mercedes–Benz of N. Am., Inc. v. Norman Gershman's Things to Wear, Inc.*, Del.Supr., 596 A.2d 1358, 1365 (1991). This Court will overturn the findings of the trial court only if there is an "error in the ruling" and a "substantial right of the party is affected." *Id.* at 1365 (quoting D.R.E. 103(a)); *Firestone Tire & Rubber Co. v. Adams*, Del.Supr., 541 A.2d 567, 570 (1988).

Officer Jackson was not, by his own admission, an expert in accident reconstruction. Nonetheless, the Superior Court correctly determined that Officer Jackson need not be an "expert" for purposes of his testimony. When a witness testifies based on his own experience, knowledge and facts of a particular case, he is not giving "expert testimony" as that term is defined in the Delaware Rules of Evidence. *McLain v. General Motors Corp.*, Del.Supr., 569 A.2d 579, 584 (1990). The record reveals that Webb's counsel established a proper foundation concerning Officer Jackson's experience and the particulars of this case prior to eliciting the testimony concerning the accident report. His testimony was of a factual, and not an expert nature.

In any event, Officer Jackson did not testify that Laws' improper crossing was the legal or proximate "cause" of the accident for purposes of Laws' negligence action, but rather, he testified that, at the time of the accident, he merely filled in the "primary cause" box on his report with the phrase "improper crossing." Officer Jackson repeatedly stated that he was not qualified to determine causation, and that he was not an accident reconstructionist. His testimony was circumscribed by the cursory nature of the investigation he undertook of the accident—a point that was emphasized to the jury. Under the circumstances, we cannot conclude that the Superior Court abused its discretion in admitting the testimony of Officer Jackson. *See also Adams,* 541 A.2d at 571.

V

Laws next claims that evidence of her alcohol consumption should not have been admitted. Prior to trial, Laws filed a motion *in limine* to exclude all testimony or other evidence of her alcohol consumption before the accident. Although the court granted Laws' motion in part, it did admit her statement that she had been drinking, as well as hospital records that confirmed this statement. Laws then admitted negligence in an apparent preemptive attempt to exclude this information. The court denied Laws' "renewed" motion *in limine.* Laws claims that the court abused its discretion in this regard, since D.R.E. 403 clearly prohibits the introduction into evidence of testimony or documents when their prejudicial value outweighs their probative value. Laws complains that the evidence was irrelevant and unduly prejudicial. We find no error in this ruling.

Again, a determination of the relevancy of evidence is directed to the sound discretion of the trial court and will be reversed only when a clear abuse of that discretion is shown. *Adams,* 541 A.2d at 570 (citing *Lampkins v. State,* Del.Supr., 465 A.2d 785, 790 (1983)). It is also within the discretion of the trial court to determine whether the probative value of certain evidence is substantially outweighed by the danger of unfair prejudice to the opposing party. *Id.* (citing *Williams v. State,* Del.Supr., 494 A.2d 1237, 1241 (1985); D.R.E. 401, 402, 403). This Court will overturn the findings of the trial court only if there is an "error in the ruling" and a "substantial right of the party is affected." *Mercedes–Benz,* 596 A.2d at 1365 (quoting D.R.E. 103(a)); *Adams,* 541 A.2d at 570.

In this case, the Superior Court concluded that evidence of Laws' alcohol consumption was relevant for two primary reasons. First, notwithstanding Laws' admission of negligence, her alcohol consumption was relevant to the degree of her negligence. Second, the court noted that Laws' alcohol consumption could assist in the jury's determination of her perceptive abilities around the time of the accident. The court weighed the probative value of Laws' alcohol consumption against its prejudicial value under D.R.E. 403 and determined that any prejudice was "outweighed by the defendant's fair need to have the jury understand as much as possible about the background of one of the potential proximate causes of the accident."

Given the Webbs' testimony regarding the erratic behavior of Laws on the night of the accident, her perceptive ability was directly at issue and pertinent to her relative fault. Whether her perception was impaired by alcohol consumption was not only relevant, but was directly related to the apportionment of liability and the issue of causation. Additionally, the potential prejudicial effect of this evidence was minimized by the fact that the court, due to the possibility of juror confusion, refused to admit all other evidence related to Laws' alcohol consumption—arguably the most prejudicial evidence, *i.e.,* her blood alcohol content reading and statements that she had some sort of drinking problem. We therefore find that the court properly exercised its discretion in permitting the admission of the limited amount of alcohol-related evidence.

VI

In conclusion, we find that the doctrine of last clear chance was effectively abrogated by this State's adoption of comparative negli-

gence in 1984. The doctrine affords a negligent plaintiff a complete recovery regardless of relative fault and thus directly contravenes Delaware's modified comparative negligence system that assigns liability in proportion to fault. We find no abuse of discretion in the court's evidentiary rulings as to the admissibility of Laws' alcohol consumption and Officer Jackson's statements regarding the "cause" of the accident contained in the police report. Finally, to the extent the court erred in permitting testimony regarding the non-issuance of traffic violations, such error was harmless. Accordingly, we AFFIRM the judgment of the Superior Court.