**Virginia L. PORTER, Individually, and In Her Capacities as Surviving Spouse Of Michael A. Porter, As Administratrix For The Estate of Michael A. Porter, Deceased, And As Guardian Ad Litem and Next Friend of Kimberly M. Porter, a Minor, and John R. Porter, Plaintiffs,**

v.

**Wayne H. MURPHY and Boulden Buses, Inc., a Delaware Corporation, Defendants.**

**C.A. No. 99C–08–258RRC.**

Superior Court of Delaware, New Castle County.

Submitted: July 11, 2001.
Decided: Oct. 2, 2001.

Ben T. Castle, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, for Plaintiffs.

Stephen P. Casarino, Esquire, Casarino, Christman & Shalk, Wilmington, for Defendants.

## MEMORANDUM OPINION

COOCH, J.

### INTRODUCTION

This is the Court's decision on a motion for a new trial filed by Virginia L. and John R. Porter (hereinafter "Plaintiffs"). Virginia L. Porter had brought suit individually, as administratrix for the estate of

her deceased husband Michael A. Porter, and as guardian ad litem of her daughter, Kimberly M. Porter; John R. Porter brought suit as the adult son of the decedent. Plaintiffs had filed a personal injury and wrongful death action against Defendants Wayne H. Murphy and Boulden Buses, Inc. (hereinafter "Defendants"), seeking money damages for the personal injuries of decedent Michael A. Porter, who was struck from behind while operating a motor vehicle and stopped at an intersection, and further alleged that the subsequent suicide of the decedent, who became depressed after the accident, was directly attributable to Defendants' negligence. Plaintiffs claimed among other things that the injuries suffered by the decedent rendered him unable to effectively perform his duties as a lab technician or to cope with the financial repercussions of the injuries, and that these inabilities led to decedent's depression and resulting suicide.

A jury awarded $60,000 to Plaintiffs for the injuries suffered by the decedent, but found that the negligence of Defendants was not the proximate cause of decedent's suicide and thus awarded nothing on the wrongful death claim.

■ The Court gave the following instruction to the jury on the issue of proximate cause for a suicide that followed negligently inflicted injuries:

If the negligence of the defendants cause[s] mental illness which results in an uncontrollable impulse to commit suicide [,] then [ ] the defendants may be held liable for the death. On the other hand, if the negligence of the defendants only causes a mental condition in which the injured person is able to realize the nature of the act of suicide, and has the power to control it if he so desires, the act then becomes an independent intervening force and the defendants cannot be held liable for the death.

Plaintiffs contend that this instruction was error and that this Court should have instructed the jury using the traditional "but for" standard for proximate cause as articulated in *Duphily v. Delaware Elec. Co-op, Inc.*, Del.Supr., 662 A.2d 821 (1995). Plaintiffs, stating that "the issue is a pure proximate cause question," [1] requested the following instruction:

For defendants to be liable to plaintiffs, the injuries and damages claimed by plaintiffs must have been proximately caused by a negligent act of defendants. This means that a negligent act must bring about or produce, or help to bring about or produce, plaintiffs' injuries and damages, and but for the negligent act, the injuries and damages would not have occurred. In this case, the defendants admit that their negligence caused injury to Michael Porter.

Proximate cause is a cause that directly produces the harm, and but for which the harm would not have occurred. A proximate cause brings about, or helps to bring about, the injury, and it must have been necessary to the result.

In this case plaintiffs contend that the automobile accident of September 26, 1997 was a proximate cause of personal injury to Michael Porter, and, further, that those injuries were a proximate cause of his suicide on October 7, 1998. The defendants admit that the accident was a proximate cause of injury to Michael Porter, but deny that any injury he sustained in the accident was a cause of his suicide.

Defendants' position is that the jury instruction was proper even though they had requested that the Court instruct the jury

---

1. Pls.' Mot. for New Trial ¶ 3.

on proximate cause for suicide utilizing language directly from the Restatement (Second) of Torts § 455:

If the actor's negligent conduct so brings about the delirium or insanity of another as to make the actor liable for it, the actor is also liable for harm done by the other to himself while delirious or insane, if his delirium or insanity

(a) prevents him from realizing the nature of his act and the certainty of risk of harm involved therein, or

(b) makes it impossible for him to resist an impulse caused by his insanity which deprives him of his capacity to govern his conduct in accordance with reason.

Plaintiffs also assert that a new trial should be granted on a second independent ground because of an irregularity which occurred during the jury's deliberations. At the jury's request, and without the knowledge of the Court or counsel, the bailiff brought a copy of *Webster's New Collegiate Dictionary* (1981 ed.) from the New Castle County law library into the jury room during jury deliberations. Plaintiffs claim that this action presumptively tainted the evidence properly before the jury and that the definitions in the dictionary "presumably contradicted the legal instructions [given by the Court when charging the jury]."[2]

Defendants agree that it was improper for the bailiff to have provided the jurors with a dictionary without the permission of the Court; however, Defendants argue that, absent a finding of prejudice from that act, the granting of a new trial is not warranted.

For the reasons set forth below, this Court concludes that the granting of a new trial is not warranted. The jury was properly instructed. The Court also finds no

prejudicial error resulting from the jurors being provided with a dictionary by the bailiff. Therefore, Plaintiffs' request for a new trial is DENIED.

## FACTS AND PROCEDURAL HISTORY

On September 26, 1997, decedent Michael A. Porter, while stopped at an intersection during the operation of his motor vehicle, was struck from behind by a bus. The bus was owned and operated by defendant Boulden Buses, Inc., and was driven by defendant Wayne H. Murphy. Decedent was removed from the accident scene by ambulance, and defendant Murphy was cited for inattentive driving. Testimony at trial indicated that decedent suffered injuries to his back, neck, chest, eye, and leg. At the time of the accident, defendant Murphy was acting in the course and scope of his employment with defendant Boulden. There was testimony at trial that decedent became depressed after the accident. The decedent committed suicide by hanging himself on the morning of October 7, 1998.

Plaintiffs' personal injury action was tried before a jury in March 2001. Liability for the automobile accident was uncontested at trial. The sole issues presented at trial were 1) the extent of damages suffered by decedent for the period between the occurrence of the accident and the decedent's death; and 2) whether Defendants' negligence was the proximate cause of decedent's death by suicide, and, if so, the measure of those damages. Plaintiffs relied in part on the expert testimony of Constance Dancu, Ph.D., in order to establish that Defendants' negligence was the proximate cause of the suicide.

---

**2.** Pls.' Mot. for New Trial ¶ 10.

Dr. Dancu testified in essence that suicide is often linked to mental illness, and that this mental illness often inhibits a person's ability to see solutions other than suicide to their problems. Dr. Dancu also testified that persons who are depressed are considered at high risk of committing suicide. Dr. Dancu concluded that the decedent's suicide was a result of depression stemming from the automobile accident leading to an inability to see alternatives other than suicide.

Neither Dr. Dancu's testimony nor any other testimony in Plaintiffs' case in chief suggested that decedent was acting under an uncontrollable impulse when he committed suicide. On the contrary, testimony at trial showed that decedent had taken steps to ensure that his act of suicide would be carried out; decedent said good-bye to his family members and made sure his wife was fast asleep when he hung himself early in the morning of October 7, 1998. With the exception of Dr. Dancu (who never saw decedent while he was still alive), each doctor who testified at trial had also treated the decedent following the accident and failed to detect any sign of depression. Testimony was also given that decedent had been experiencing difficulties at work that may have affected his emotional well-being independently of the injuries the decedent suffered as a result of the accident.

When the jury retired for deliberations, it requested a dictionary from the bailiff. Without conferring with the Court or with counsel, the bailiff obtained a dictionary from the New Castle County law library which he then gave to the jurors. This development was made known to the Court and counsel only after the jury had rendered its verdict and had been dismissed. It is unknown what, if any, terms the jury may have looked up in that dictionary.

The jury returned a verdict in the amount of $60,000 for the harm the decedent suffered up until the time of his death. However, the jury found that the Defendants' negligence was not the proximate cause of decedent's death and therefore awarded nothing for the wrongful death claim. Plaintiff then filed this motion for a new trial.[3]

## DISCUSSION

**A. The Jury Instruction Set Forth the Applicable Standard of Proximate Causation for a Suicide**

This case involves application of the proper legal standard of proximate cause with regard to negligently inflicted injury followed by suicide. Plaintiffs sought a traditional proximate cause instruction, asserting that suicide should be, as a matter of law, causally connected to negligently inflicted injury under a "but for" standard. Defendants argued for an instruction based on the Restatement (Second) of Torts § 455. No reported or unreported Delaware case appears to have spoken to the issue presented by this case, namely, the standard for proximate cause to be applied in wrongful death actions predicated upon negligence followed by suicide.

The closest that a Delaware court has come to deciding the applicable standard was in *Loden v. Getty Oil Co.*, Del.Supr., 359 A.2d 161 (1976). There, in an interlocutory appeal, the Supreme Court noted,

---

3. Two other post-trial motions were filed in this case. Defendants filed a "Motion for Remittitur, or, in the Alternative, for a New Trial," which this Court has denied. *Porter v. Murphy*, Del.Super., C.A. No. 99C–08–258, Cooch, J. (October 2, 2001)(ORDER). Plaintiffs filed a Bill of Costs, which the Court has granted in part and rejected in part. *Porter v. Murphy*, Del.Super., C.A. No. 99C–08–258, Cooch, J. (October 2, 2001)(ORDER).

without comment, the Superior Court's holding denying defendant's motion to dismiss[4] that "[i]f plaintiff can establish evidence showing that the suicide which followed the burns suffered by decedent proximately resulted from the original injuries, it is a proper element of damages which a jury can consider if it finds in favor of plaintiff."[5] Notably, the Supreme Court did not determine what proximate cause standard to apply (and thus whether damages could be awarded) because the question of whether decedent's suicide resulted from the injury decedent suffered was a fact still in dispute in the Superior Court action.[6]

At least three major approaches to liability for injury-based suicide have emerged.[7] The oldest of the three approaches denies recovery to the estate of an injured party under the theory that the decedent's suicide is an intervening act that relieves the original tortfeasor of liability.[8] The second approach, drawn from the Restatement (Second) of Torts § 455, permits recovery from the original tortfeasor when negligently inflicted injury leads to delirium or insanity, which in turn leads to suicide.[9] A third approach permits recovery from the original tortfeasor if the injured party's suicide is a reasonably foreseeable consequence of the negligently inflicted injury, regardless of the sanity or insanity of the tort victim at the time of the suicide; this approach has been suggested in *dicta* in some cases but apparently has not yet been adopted by any jurisdiction.[10]

This Court considered the language of the Restatement (Second) when making its determination of the appropriate standard of causation in this case, and recognized that when faced with unsettled law, Delaware courts often adopt the Restatement (Second)'s approach. Section 455 of the Restatement (Second) has in fact been referred to as a "special rule of proximate causation" applicable in suicide cases.[11] However, this Court was dissatisfied with the somewhat archaic language contained in § 455.[12]

■ This Court instead found the language of a jury instruction used in a 1960

---

4. *Loden v. Getty Oil Co.*, Del.Super., 340 A.2d 174 (1975)

5. *Loden v. Getty Oil Co.*, Del.Supr., 359 A.2d 161, 162 n. 2. (However, the quoted passage in this footnote does not appear in the Superior Court opinion published at 340 A.2d 174)

6. *Loden*, 359 A.2d at 164. The original Superior Court file, obtained from Delaware State Archives, does not indicate what instructions were actually given at trial in the *Loden* case. The original Court Reporter's notes also have apparently been destroyed.

7. *See Clift v. Narragansett Television L.P.*, R.I.Supr., 688 A.2d 805 (1996)(identifying and tracing development of major theories); *see also* Allen C. Schlinsog, Jr., Comment, *The Suicidal Decedent: Culpable Wrongdoer, or Wrongfully Deceased?*, 24 J. Marshall L.Rev. 463 (1991)(analyzing major theories).

8. *See Scheffer v. Railroad Co.*, 105 U.S. 249, 26 L.Ed. 1070 (1881)(holding that proximate cause of decedent's death was decedent's own act of suicide).

9. *See Bogust v. Iverson*, Wis.Supr., 10 Wis.2d 129, 102 N.W.2d 228 (1960); *Daniels v. New York N.H. & H.R.R.*, Mass.Supr., 183 Mass. 393, 67 N.E. 424 (1903)

10. *See Halko v. New Jersey Transit Rail Operations, Inc.*, S.D.N.Y., 677 F.Supp. 135. (1987); *Fuller v. Preis*, N.Y. Ct.App., 35 N.Y.2d 425, 363 N.Y.S.2d 568, 322 N.E.2d 263 (1974).

11. *See* 22A Am.Jur.2d *Death* § 54 (1988)(stating that courts often cite the "special rule" of § 455 when allowing recovery for negligently inflicted injury followed by suicide).

12. The language contained in § 455 of the Restatement (Second) has not been revised since adoption of the first Restatement in 1934.

California case, *Tate v. Canonica*,[13] to be a sensible modern formulation of the rule. *Tate* does not contain the "insanity" and "delirium" language of the Restatement, but stated the rule as follows:

> [W]here the negligent wrong only causes a mental condition in which the injured person is able to realize the nature of the act of suicide and has the power to control it if he so desires, the act then becomes an intervening force and the wrongdoer cannot be held liable for the death. On the other hand, if the negligent wrong causes mental illness which results in an uncontrollable impulse to commit suicide, then the wrongdoer may be held liable for the death.[14]

The Court utilized the *Tate* decision when formulating the jury instruction in this case.

*Tate* involved allegations of both willful and negligent infliction of emotional distress followed by suicide, and was a case of first impression in California. After rejecting the defendant's argument that suicide is always an independent intervening cause (thus breaking the causal chain and absolving tortfeasors), the court reviewed the holdings of other jurisdictions that had decided the issue. The *Tate* court then adopted a variation of the language of the Restatement, believing its approach to be "more realistic" than the "delirium" or "insanity" requirements of the Restatement.

This Court believes the *Tate* formulation to be a correct expression of the rule.[15] This Court sees the language of *Tate* as a refinement of the Restatement approach, and accordingly chose to utilize it. The view that suicide is always an independent intervening act relieving a tortfeasor of liability appears too restrictive to this Court.[16]

Plaintiffs cite the Delaware case of *Delaware Tire Center v. Fox*[17] as setting forth an example of the type of language that this Court should have used in the jury instruction in the present case. In that case, the Supreme Court held that the Superior Court had properly formulated the legal test of whether a suicide following an industrial accident could be compensable under Delaware's Workers' Compensation Act. The Supreme Court stated:

> [D]eath by suicide [is] compensable if it is caused by severe pain and despair which proximately results from a compensable accident, and is of such a degree as to override normal and rational judgment. A suicide committed under such circumstances cannot be said to be [a death of willful intention] even though the act itself may be volitional.[18]

Plaintiffs urge that a similar instruction here would have been appropriate to assist the jury in evaluating the testimony of Dr. Dancu.

However, this Court believes the jury instruction in fact used was closer to the

---

13. Cal.Ct.App., 180 Cal.App.2d 898, 5 Cal. Rptr. 28 (1960)

14. *Id.* at 915, 5 Cal.Rptr. 28

15. The *Tate* reasoning has been met with approval by other courts. A recent United States District Court recently referred to *Tate* as the "seminal case on this issue." *Ko v. Sears Roebuck and Co.*, E.D. Mich., 982 F.Supp. 471, 475 (1997). *See also Orcutt v. Spokane County*, Wash.Supr., 58 Wash.2d

846, 364 P.2d 1102 (1961)(quoting *Tate* decision in remanding case with instruction that question whether deceased took her own life pursuant to uncontrollable impulse while in state of insanity was for jury to determine).

16. Neither party requested a "superseding" or "intervening" act instruction in this case.

17. Del.Supr., 411 A.2d 606 (1980).

18. *Delaware Tire Center*, 411 A.2d at 606.

language of *Delaware Tire Center* than the "pure" proximate cause instruction actually requested by Plaintiffs. The language from that case, emphasizing an override of normal and rational judgment, appears to this Court to be substantially the same as the "uncontrollable impulse" instruction given in this case. This similarity is even more apparent when considering that the instructions from both *Delaware Tire Center* and the present case focus on whether the decedent's act of suicide was willfully intended or instead was an act for which the decedent ultimately cannot be held responsible.

Plaintiffs additionally argue that the language drawn from *Tate* and used in the jury instruction was not finally decided upon by the Court prior to the testimony of Plaintiffs' expert, Dr. Dancu. Consequently, Plaintiffs complain that some terms contained in the jury instruction on proximate cause were not explained by Dr. Dancu. Plaintiffs contend that the jury instruction given on proximate cause of suicide "introduced semi-technical terms...not mentioned, much less addressed, by the expert testimony." [19]

However, had Plaintiffs requested a final ruling from this Court on the jury instructions to be used on proximate causation prior to Dr. Dancu's testimony, this Court would have recessed the trial and issued its decision on the appropriate proximate cause instruction prior to Dr. Dancu's testimony, but Plaintiffs made no such request. In any event, it is not uncommon for jury instructions to be finalized at the conclusion of all the evidence.

Plaintiffs lastly argue that the Court did not define such terms as "uncontrollable impulse" and "independent intervening force" when the jury was given the proximate cause for suicide instruction. However, Plaintiffs did not ask for any words in the instruction to be defined by the Court. Plaintiffs should not now be heard to complain that individual terms were not separately defined.[20]

The proximate cause instruction was a correct statement of law. A new trial is not warranted based on this ground.

## B. Plaintiffs Have Not Shown That the Trial Irregularity of the Dictionary Being Brought Into Jury Deliberations Was Prejudicial

Plaintiffs' second ground for seeking a new trial is that a dictionary was made available by the bailiff to the jury at the jury's request without the knowledge of either the Court or counsel. This unilateral action by the bailiff was improper. Plaintiffs argue that "the only reasonable inference is that the jury looked up the very words that went to the core of the case," [21] and that the introduction of the dictionary "tainted the evidence and presumably contradicted the legal instructions." [22]

Defendants respond that without a showing of actual prejudice, the introduction of the dictionary into the jury room fails to warrant a new trial. Defendants argue the granting of a new trial is not called for because the jury instruction regarding proximate cause for suicide was

**19.** Pl.'s Mot. ¶ 4.

**20.** *See Super.* Ct. Civ. R. 51, which states, "At the close of the evidence or at such earlier time as the Court reasonably directs, any party may file written requests that the Court instruct the jury on the law as set forth in the requests....No party may assign as error the giving or the failure to give an instruction

unless a party objects thereto before or at the time set by the Court immediately after the jury retires...."

**21.** Pls.' Mot. ¶ 8.

**22.** Pls.' Mot. ¶ 10.

plainly stated and did not contain unfamiliar legal terms.[23]

Because this Court believes its jury instruction to have been a clear and correct statement of law regarding proximate cause for suicide, and because the word or words—if any—that the jury may have looked up is speculative, this Court finds no demonstrable prejudice to Plaintiffs.

The legal effect of a jury's unauthorized utilization of a dictionary is apparently an issue of first impression in the Delaware courts. However, the Maryland Court of Appeals has stated that "[i]t appears to be the near universal consensus that a new trial is not awarded simply because a dictionary was before the jury....[There must be] prejudice to the complaining party."[24] With regard to the nature or degree of prejudice required for the complaining party to prevail, there appears to be no uniform rule.[25] Some courts require the complaining party to prove prejudice in fact, so that, absent such proof, a new trial is not awarded.[26] Other courts presume prejudice to the complaining party, thus placing the burden to demonstrate lack of prejudice upon the party opposing a new trial.[27]

In circumstances somewhat similar to those currently at hand, the court in *Rocky Mountain Trucking Co. v. Taylor*, Wyo. Supr., 79 Wyo. 461, 335 P.2d 448 (1959) refused to grant a new trial even though the jury had asked for and had received a dictionary from the bailiff without knowledge of court or counsel. An affidavit was submitted to the court from the bailiff stating that she did not know for what purpose the jurors used the dictionary, and there was no juror testimony on the issue. Thus, "the only fact to be considered when the motion for new trial was passed upon was that the jury had asked for and received a Webster's Standard Dictionary."[28] In view of the fact that the verdict was, in the opinion of the *Rocky Mountain* court, "amply sustained" by the evidence, "the misconduct of jury, while grave, was not prejudicial to the rights of the appellants [therein]."[29]

■ Given that the jury's verdict here, like the jury verdict in the *Rocky Mountain* case, is otherwise "amply sustained" by the evidence, the Court chooses to follow that court's approach and rejects the Plaintiffs' motion for a new trial. The Court cannot know what, if any, words the jurors looked up. While Plaintiffs argue that "[t]he only reasonable inference to be drawn from [the jury's request for a dictionary] is that the jury used the dictionary in an effort to define ['uncontrollable impulse'],"[30] this "only reasonable inference" is completely speculative. Accordingly, this Court does not find Plaintiffs' argument persuasive. A new trial is not warranted based on this ground.

Plaintiffs' Motion for a New Trial is DENIED.

IT IS SO ORDERED.

---

**23.** Defs.' Resp. ¶ 6

**24.** *Wernsing v. General Motors Corp.*, Md. App., 298 Md. 406, 470 A.2d 802, 806 (1984).

**25.** *See* Jean E. Maess, Annotation, *Prejudicial Effect of Jury's Procurement or Use of Book During Deliberations in Civil Cases*, 31 A.L.R.4th 623, 629 (1984)

**26.** *Wernsing*, 470 A.2d at 806 (internal citations omitted)

**27.** *Id.* at 807 (internal citations omitted).

**28.** *Rocky Mountain*, 335 P.2d at 488

**29.** *Id.*

**30.** Pls.' Rep ¶ 5.