**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

ABIGAIL M. LEGROW
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
TELEPHONE (302) 255-0669

January 31, 2023

Kelley M. Huff, Esquire
Gilbert F. Shelsby, Jr., Esquire
Shelsby & Leoni
221 Main Street
Wilmington, DE 19804

Colleen D. Shields, Esquire
Alexandra D. Rogin, Esquire
Eckert Seamans Cherin & Mellott, LLC
222 Delaware Avenue, 7th Floor
Wilmington, DE 19801

> RE: ***James Healy, Jr. v. Fresenius Medical Care Northern Delaware, LLC, et al.***
> **C.A. No. N20C-04-227 AML**

Dear Counsel,

The plaintiff filed a wrongful death claim alleging that negligent medical care proximately caused his father to commit suicide. The plaintiff contends the defendants' negligence caused his father to suffer serious and disabling injuries, including disfigurement, disability, loss of function, and physical and emotional pain and suffering. The plaintiff further avers that the pain and loss of function caused his father to become overwhelmed with depression and ultimately led to his father's suicide three months after the allegedly negligent treatment. The defendants moved for summary judgment as to the plaintiff's wrongful death claim, arguing the

plaintiff had not identified an expert qualified to opine that the defendants' negligence proximately caused the suicide.

In order to resolve the summary judgment motion, the Court was required to define the proximate cause standard for wrongful death claims arising from negligence followed by suicide. Although the Court denied the defendants' summary judgment motion, concluding the plaintiff's expert report met the proximate cause standard, the plaintiff moved for reargument regarding whether the Court applied the correct proximate cause standard. The plaintiff urges the Court to adopt a standard formulated in workers' compensation cases: whether the pain and despair resulting from the negligence was "of such a degree so as to override normal and rational judgment." The Court, however, adopted a standard articulated in Delaware and other jurisdictions in negligence cases: whether the negligence caused mental illness that resulted in an "uncontrollable impulse" to commit suicide. To the extent there is a difference between these two standards, the uncontrollable impulse standard is more appropriate in a negligence case. Accordingly, the plaintiff's motion for reargument is denied.

**Factual Background**

Unless otherwise noted, the following facts are drawn from the parties' summary judgment briefs and attached exhibits. Plaintiff James Healy, Jr. filed this

action individually and on behalf of the estate of his father, James Healy, Sr. (hereinafter, "Mr. Healy"). Mr. Healy, who died in July 2019 at the age of 76, was a widower and Plaintiff was his only child. According to the record, Mr. Healy was a farmer who actively worked on his family farm every day. In the years before his death, however, Mr. Healy was diagnosed with a number of medical conditions, including chronic kidney failure. In 2015, Mr. Healy became a patient of Dr. Theodore Saad, a nephrologist employed by Nephrology Associates, P.A. Dr. Saad served as Medical Director at the Fresenius Kidney Care dialysis clinic that Mr. Healy attended.

Mr. Healy began hemodialysis in 2018 and adjusted well to the procedure. He underwent dialysis three times a week for approximately four hours each session. Mr. Healy had an AV graft access point for his dialysis. Even on the days he underwent dialysis, Mr. Healy typically was able to work actively on his farm. In April 2019, however, Plaintiff alleges Mr. Healy presented at the dialysis clinic on several occasions with worsening symptoms of an infection. According to Plaintiff, Dr. Saad and Fresenius employees failed to diagnose the infection in a timely manner and, when the infection finally was diagnosed, failed to treat it properly.

Mr. Healy was admitted to the hospital on April 18, 2019. While in the hospital, he suffered a number of complications and underwent further procedures

allegedly as a result of Defendants' negligence. Mr. Healy was discharged to a rehabilitation facility after three weeks in the hospital. He spent two months in rehabilitation before he was discharged to his home with a hospital bed, wheelchair, and walker. Even after discharge, Mr. Healy was dependent on Plaintiff and home healthcare workers for all his care needs.

Three days after he was discharged, Mr. Healy took his own life while Plaintiff was at a nearby store. He left a note on his phone that read:

> I can['t] deal with. Any more
> Doctors and pt. I am sorry
> I messed up again please
> forgive me

**Procedural Background**

Plaintiff filed this action individually and as personal representative of Mr. Healy's estate. The named defendants are the practitioners and clinics who provided care to Mr. Healy between April 13, 2019 and April 18, 2019 and allegedly failed to properly diagnose and treat his infection. The complaint alleges that Defendants' negligent treatment caused Mr. Healy to "suffer a progression of his infection resulting in sepsis, hospitalization, and injury."[1] Plaintiff avers this negligence caused Mr. Healy to need "substantial medical treatment" and suffer injuries "causing pain and suffering, disfigurement, disability, and emotional pain and

---

[1] Compl. ¶ 24.

suffering."[2]  Plaintiff alleges Mr. Healy was confined to a wheelchair and severely depressed because of the personal injuries he suffered, and "[a]s a result of emotional strain and depression, [Mr. Healy] took his own life."[3]

The complaint contains two counts: Count I is a wrongful death claim under 10 *Del. C.* § 3724.  Count II is a survival action seeking damages for the medical expenses, injuries, and physical and emotional pain and suffering that Mr. Healy suffered until his death.

At the conclusion of fact and expert discovery, Defendants moved for summary judgment as to Count I, arguing Plaintiff had not identified an expert whose testimony would allow a jury to conclude that Defendants' alleged negligence proximately caused Mr. Healy's death.  Defendants argued that in order to establish a *prima facie* case in a wrongful death claim resulting from a suicide, Plaintiff had to provide expert testimony that "the negligent wrong caused mental illness which results in an uncontrollable impulse to commit suicide."[4]  Plaintiff responded that the "uncontrollable impulse" standard on which Defendants relied was not the correct standard in Delaware.  Plaintiff argued he could submit his wrongful death claim to the jury if his expert offered an opinion consistent with Delaware's

---

[2] *Id.* ¶¶ 26-28.
[3] *Id.* ¶ 29.
[4] Defs.' Mot. for Summ. J. at 1-3 (quoting *Porter v. Murphy*, 792 A.2d 1009, 1011 (Del. Super. 2001)).

traditional "but for" standard, that is, that Mr. Healy' suicide proximately resulted from the original injuries he suffered as a result of Defendants' alleged negligence.[5] Plaintiff alternatively argued that, even if the "uncontrollable impulse" standard applied in wrongful death claims involving suicide, Plaintiff's psychiatry expert met that standard by opining that Defendants' negligence "caused Mr. Healy to suffer unbearably and to such a degree as to override his normal and rational judgment."[6]

After the parties briefed Defendants' motion for summary judgment, the Court held oral argument. At the conclusion of that hearing, the Court issued a bench ruling denying Defendants' motion. The Court agreed with Defendants that the "uncontrollable impulse" standard is the standard a plaintiff must meet to prevail on a claim that medical negligence proximately caused a person to commit suicide. The Court concluded, however, that Plaintiff's expert disclosure met that standard, reasoning that Delaware law does not require the invocation of "magical words" and a jury could conclude that Plaintiff met the uncontrollable impulse standard based on Plaintiff's expert's proffered opinion that Mr. Healy's suffering overrode his normal and rational judgment.[7]

---

[5] Pl.'s Opp. to Mot. for Summ. J. at 2-3 (citing *Loden v. Getty Oil Co.*, 359 A.2d 161 (Del. 1976)).
[6] Defs.' Mot. for Summ. J., Ex. D at 6.
[7] *See Healy v. Fresenius Medical Care Northern Delaware, LLC*, C.A. No. N20C-04-227 AML (Sept. 15, 2022) (Transcript) at 30-35.

Plaintiff filed a timely motion to reargue the Court's ruling regarding the proximate cause standard for wrongful death claims arising from suicide. Defendants opposed that motion, and the Court held a hearing on October 13, 2022. The Court then took the motion under advisement in order to issue a written opinion addressing the proximate cause standard applicable in this case.[8]

**Analysis**

A motion for reargument will be granted if the Court has "overlooked a controlling precedent or legal principles, or misapprehended the law or facts such as would have changed the outcome of the underlying decision."[9] Movants neither may present new arguments nor rehash those already presented.[10] The movant "has the burden of demonstrating newly discovered evidence, a change in the law or manifest injustice."[11]

Plaintiff argues this Court should grant reargument in order to revisit its holding regarding the proximate cause standard applicable to wrongful death claims alleging a negligently inflicted injury resulted in suicide. There are very few

---

[8] The Court initially ruled from the bench because trial was scheduled for November 2022 and there were several imminent pretrial deadlines. In October 2022, the Court rescheduled the trial due to courtroom availability and scheduling issues. Trial is now scheduled for December 2023.

[9] *Radius Servs., LLC v. Jack Corrozi Const., Inc.*, 2010 WL 703051, at *1 (Del. Super. Feb. 26, 2010) (quoting *Lamourine v. Mazda Motor of Am.*, 2007 WL 3379048, at *1 (Del. Super. Sept. 24. 2007)).

[10] *Reid v. Hindt*, 2008 WL 2943373, at *1 (Del. Super. July 31, 2008).

[11] *Id.* (quoting *State v. Brooks*, 2008 WL 435085, *2 (Del. Super. Feb. 12, 2008)).

Delaware cases addressing wrongful death claims in the context of suicide. The Court therefore frames its analysis with some basic, undisputed principles. First, in order to recover on a claim for medical negligence, a plaintiff must offer expert testimony "as to the causation of the alleged personal injury or death."[12] Second, Delaware has adopted the traditional "but for" test for causation; that is, whether the negligent act is the direct cause without which the injury would not have occurred.[13] Stated more clearly, a proximate cause is one that "in natural and continuous sequence, unbroken by any inefficient intervening cause, produces the injury and without which the result would not have occurred."[14] Delaware law also recognizes that there may be more than one proximate cause of an injury.[15]

Third, proximate cause can be broken by an intervening, superseding cause. An intervening cause is one that "comes into active operation in producing an injury" after the defendant's negligence.[16] An intervening cause's occurrence, however, does not necessarily break the causal chain arising from the original tortious act, since there may be more than one proximate cause of an injury.[17] Rather, an

---

[12] 18 *Del. C.* § 6853(e).
[13] *Culver v. Bennett*, 588 A.2d 1094, 1097 (Del. 1991).
[14] *Moffitt v. Carroll*, 640 A.2d 169, 174 (Del. 1994) (citing *Culver*, 588 A.2d at 1097) (internal quotations and citations omitted).
[15] *Id.*
[16] *Duphily v. Delaware Elec. Co-Op., Inc.*, 662 A.2d 821, 829 (Del. 1995).
[17] *Id.* at 829 (citing *Laws v. Webb*, 658 A.2d 1000, 1007) (Del. 1995)).

intervening act only breaks the causal chain if it also is a "superseding cause," that is, "an intervening act or event that was neither anticipated nor reasonably foreseeable by the original tortfeasor."[18]

With those general standards in mind, the Court turns to the issue in this case. The question necessarily implicated in a wrongful death claim predicated on a negligent act followed by suicide is whether the suicide is an intervening, superseding cause. The existence of an intervening, superseding cause is a fact question for the jury, assuming a plaintiff identifies an expert able to opine as to causation.[19] In denying Defendants' summary judgment motion, the Court concluded Plaintiff's expert's opinion was sufficient to allow a jury to conclude that Defendants' negligence proximately caused Mr. Healy's suicide. In his motion for reargument, however, Plaintiff contends the Court improperly defined the proximate cause standard as requiring Plaintiff to prove by a preponderance of the evidence that Defendants' negligence resulted in Mr. Healy having an "uncontrollable impulse" to commit suicide.

The "uncontrollable impulse" standard the Court adopted is drawn from *Porter v. Murphy*, which appears to be the only Delaware case directly addressing a

___

[18] *Id.* (citing *Stucker v. American Stores Corp.*, 171 A.2d 230, 233 (Del. 1934)).
[19] *McKeon v. Goldstein*, 164 A.2d 260, 262-63 (Del. 1960); *Galluci v. New Castle County*, 1978 WL 194998, at *2 (Del. Super. Mar. 30, 1978).

wrongful death claim alleging negligence resulting in suicide.[20]  In *Porter*, the plaintiffs brought a wrongful death claim alleging the defendants' negligent operation of a motor vehicle resulted in injuries to the decedent, which caused him to become severely depressed and ultimately take his own life.  This Court declined the plaintiffs' request for a jury instruction giving the standard explanation of "but for" causation.

In fashioning its proximate cause instruction, the *Porter* Court explored the approaches different jurisdictions have adopted with respect to liability for injury-based suicide.  The Court identified three "major approaches:" (1) an outright denial of recovery to the estate under the theory that suicide always is an intervening act that relieves the original tortfeasor of liability; (2) an approach drawn from Restatement (Second) of Torts § 455, which permits recover when the "negligently inflicted injury leads to delirium or insanity, which in turn leads to suicide," or (3) a suggestion *in dicta* but not then adopted that recovery should be permitted if the suicide is "a reasonably foreseeable consequence of the negligently inflicted injury, regardless of the sanity or insanity of the tort victim."[21]

---

[20] 792 A.2d 1009 (Del. Super. 2001).
[21] *Id*. at 1014.

The *Porter* Court ultimately adopted the second approach, which was consistent with Restatement § 455, but the Court updated the Restatement's "archaic" language regarding "insanity" and "delirium."[22]   Borrowing from a California case that developed a "modern formulation" of the Restatement's standard, the *Porter* Court instructed the jury that:

> If the negligence of the defendants cause[s] mental illness which results in an uncontrollable impulse to commit suicide[,] then [] the defendants may be held liable for the death.  On the other hand, if the negligence of the defendants only causes a mental condition in which the injured person is able to realize the nature of the act of suicide, and has the power to control it if he so desires, the act then becomes an independent intervening force and the defendants cannot be held liable for the death.[23]

The *Porter* Court reasoned that this instruction was less restrictive than the view that suicide always is an intervening, superseding act and was consistent with Delaware's approach to following the Restatement in most circumstances.

Plaintiff's arguments regarding the applicable proximate cause standard have shifted over the course of this case.  In his opposition to Defendants' summary judgment motion, Plaintiff argued *Porter* was wrongly decided and the standard this Court should apply in resolving Defendants' motion was the traditional "but for" standard.  Plaintiff based this argument on the Delaware Supreme Court's decision

---

[22] *Id*. at 1014-15.
[23] *Id*. at 1011, 1015 (citing *Tate v. Canonica*, 180 Cal.App. 2d 898 (Cal. Ct. App. 1960)).

in *Loden v. Getty Oil Co.*, arguing the *Loden* Court referenced the traditional "but for" standard in a wrongful death case involving suicide, and the Delaware Supreme Court "acknowledged" that holding on appeal.[24]  But as this Court explained in its summary judgment ruling, *Loden* actually contravenes Plaintiff's argument. Although the Supreme Court in *Loden* ultimately decided not to resolve the proximate cause question because of disputed factual issues, the question originally certified from the *Loden* trial court was, *inter alia*,

> "is the fact of death resulting from [] suicide a valid basis in the law [for a wrongful death action] if . . . there is sufficient testimony to satisfy the [jury] that the decedent committed suicide as a result of a mental state induced by the accident and the injuries he sustained *and such suicide was committed as a result of a compulsive mind or a frenzy of mind or at a time when he was unable to resist an impulse to take his own life*."[25]

In other words, the *Loden* trial court appeared to have adopted a standard similar to, if not the same as, the "uncontrollable impulse" standard later adopted in *Porter*.  The Supreme Court never ruled on that standard's correctness.  For all those reasons, and based on the analysis in *Porter*, this Court held in its summary judgment ruling that Plaintiff's expert must opine that Mr. Healy's suicide was the result of an "uncontrollable impulse" arising from mental illness caused by Defendant's negligence.

---

[24] Pl.'s Opp. to Defs. Mot. for Summ. J. ¶ 5.
[25] *Loden v. Getty Oil Co.*, 359 A.2d 161, 162 n. 3 (Del. 1976) (emphasis added).

In his motion for reargument, Plaintiff retreats from his reliance on *Loden*. Plaintiff now contends this Court should adopt the standard adopted in *Delaware Tire Center v. Fox*, a case addressing the standard that should be applied in workers' compensation cases to determine whether an injury or death is willfully inflicted.[26]

In *Delaware Tire*, this Court and the Supreme Court interpreted a statute that requires a forfeiture of workers' compensation benefits if the injury resulted from an employee's willful intent to bring about injury or death.[27] The Industrial Accident Board (the "IAB") held the employee's suicide was the result of an "uncontrollable impulse" because continuous pain, anxiety and depression "deprived him of the ability to understand or appreciate the consequences of his death."[28] The IAB therefore concluded the death was not "willful." On appeal from the IAB's holding, the Superior Court upheld the conclusion as to compensability but expressed the view that the IAB's "uncontrollable impulse" standard did not appropriately "account for the role which pain or despair may play in breaking down a rational mental process."[29] The Superior Court reasoned that an unduly restrictive standard

---

[26] Pl.'s Mot. for Reargument at 3-6 (citing *Delaware Tire Center v. Fox*, 411 A.2d 606 (Del. 1980)). Notably, this argument represented a shift in Plaintiff's position; in opposition to Defendants' summary judgment motion, Plaintiff argued the *Delaware Tire* standard was the same as *Porter's* uncontrollable impulse standard. *See* Pl.'s Opp. to Defs.' Mot. for Summ. J. ¶¶ 10-13.

[27] *See* 19 Del. C. § 2353(b).

[28] *Delaware Tire*, 401 A.2d at 99.

[29] *Id*.

was not consistent with the workers' compensation statute's purpose or spirit, or the broad interpretation usually afforded that statute.[30]

On appeal, the Supreme Court affirmed the Superior Court, endorsing the Superior Court's reasoning that "[d]eath by suicide would be compensable if it is caused by severe pain and despair which proximately results from a compensable accident, and is of such a degree so as to override normal and rational judgment."[31] Based on this discussion, Plaintiff now urges the Court to follow and adopt the *Delaware Tire* standard instead of *Porter*'s uncontrollable impulse standard.

As an initial matter, Plaintiff does not meet the standard for reargument because he has not demonstrated that this Court overlooked a controlling precedent or legal principles or misapprehended the law or facts such as would have changed the outcome of the underlying decision. The Court held that Plaintiff's expert's opinion was sufficiently consistent with the uncontrollable impulse standard for Plaintiff's wrongful death claim to survive summary judgment.[32] Accordingly, nothing in Plaintiff's reargument motion would change the outcome of the Court's decision denying summary judgment.

---

[30] *Id*. at 100.
[31] *Delaware Tire*, 411 A.2d at 607.
[32] Transcript at 34.

Second, Plaintiff has not demonstrated that the standard articulated in *Delaware Tire* is a lower burden of proof than *Porter's* "uncontrollable impulse" standard. In fact, the *Porter* Court addressed *Delaware Tire* and concluded *Delaware Tire's* emphasis on pain and despair that overrides normal and rational judgment was "substantially the same as the 'uncontrollable impulse' instruction" given in *Porter*.[33] I agree; I cannot articulate—and Plaintiff has not identified—a discernible or meaningful difference between those two standards.

But, to the extent a difference exists, I continue to believe that *Porter* sets forth the correct standard for wrongful death claims arising from negligence followed by suicide. *Delaware Tire* addressed the "willful intention" standard under the workers' compensation statute. As both the Superior Court and the Supreme Court acknowledged in their respective decisions, the workers' compensation statute's primary purpose is "benevolent" and remedial and is accorded a liberal construction in keeping with that basic purpose.[34] The workers' compensation act is not based on negligence principles at all. Rather, the act is intended to "eliminate

---

[33] *Porter*, 792 A.2d at 1015-16. In *Delaware Tire*, the Industrial Accident Board used an "uncontrollable impulse" standard, which the Supreme Court stated was "perhaps" a different legal standard" from the "override of normal and rational judgment" standard, without expressly concluding that a difference existed or identifying that difference. *Delaware Tire Center*, 411 A.2d at 607.

[34] *Delaware Tire Center*, 411 A.2d at 607; *Delaware Tire Center v. Fox*, 401 A.2d 97, 100 (Del. Super. 1979).

questions of negligence and fault in industrial accidents."[35]   Delaware has not

adopted the same liberal construction with respect to medical negligence claims, and

instead requires a plaintiff to meet threshold standards to even allege, let along prove,

a claim.[36]  As a result, to the extent there is an difference between the *Porter* and

*Delaware Tire* standards, the *Porter* standard is more appropriate in a negligence

case.  To be clear, in my view, the "uncontrollable impulse" standard is not different

from "but for" causation.  Rather, it is a more precise formulation of the proximate

cause standard to be used in suicide cases where the jury necessarily will be called

upon to determine whether the suicide is an intervening, superseding cause.

## Conclusion

For the foregoing reasons, Plaintiff has not shown that the Court overlooked

controlling legal principles or misapprehended the law with respect to its adoption

of the uncontrollable impulse standard.  Plaintiff's Motion for Reargument therefore

is **DENIED**.

**IT IS SO ORDERED**.

Sincerely,

*/s/ Abigail M. LeGrow*
Abigail M. LeGrow, Judge

---

[35] *Stayton v. Clariant Corp.*, 10 A.3d 597, 599 (Del. 2010).
[36] *See* 18 *Del. C.* §6853.